```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
JEFFREY CHILDS

                    Plaintiff,           **MEMORANDUM AND ORDER**
                                         15-CV-05991 (FB)
    -against-

CAROLYN W. COLVIN
ACTING COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

---------------------------------------------------x
```

*Appearances:*
*For the Plaintiff*:  
LOUIS R. BURKO  
16 Court Street Suite 2400  
Brooklyn, New York 11241

*For the Defendant*:  
BRIDGET M. ROHDE  
Acting United States Attorney  
Eastern District of New York  
271 Cadman Plaza East, 7th Floor  
Brooklyn, New York 11201

By:   MATTHEW MAILLOUX  
       Assistant U.S. Attorney

**BLOCK, Senior District Judge:**

Jeffrey Childs ("Childs"), who formerly worked as a police officer, seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits under the Social Security Act (the "Act"). Both parties move for judgment on the pleadings. For the reasons stated

below, the Commissioner's motion is denied, Childs's motion is granted, and the case is remanded for a calculation of an award of benefits.

## I.

In December 2009, Childs filed an application for Disability Insurance Benefits. He alleged disability, as of October 31, 2007, from pain in his neck, back, left hand, shoulder and thigh. The Social Security Administration (the "SSA") denied his application, and he had a hearing before an Administrative Law Judge ("ALJ"). In a decision dated September 14, 2011, the ALJ held that Childs was not disabled. The Appeals Council denied review, and Childs sought review in this Court. On June 16, 2014, the parties voluntarily stipulated to a remand.

On remand, Childs appeared at another hearing before an ALJ, and, on March 16, 2015, the ALJ again held that Childs was not disabled. Applying the familiar five-step evaluation process,[1] the ALJ determined that: (1) Childs had not engaged in substantial gainful activity from October 31, 2007, through December 31, 2011, the date he was last insured for disability benefits under the Act; (2) his lumbar

---

[1] Under SSA regulations, the Commissioner must find that a claimant is disabled if she determines "(1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one that conclusively requires a determination of disability, . . . (4) that the claimant is not capable of continuing in his prior type of work, [and] (5) there is not another type of work the claimant can do." *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing 20 C.F.R. § 404.1520(b)-(f)). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at the fifth step. *See* 20 C.F.R. § 404.1560(c)(2); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000).

2

degenerative disc disease and status post left fourth metacarpal fracture were severe impairments; but (3) his impairments did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Childs had the residual functional capacity ("RFC") to perform sedentary work with certain restrictions. Applying this RFC to the remaining steps, the ALJ determined that (4) Childs was unable to perform his past relevant work as a police officer and police sergeant, but (5) there were jobs existing in significant numbers in the national economy that Childs could perform.

The Appeals Council denied Childs's request for review, rendering final the ALJ's decision to deny benefits. Childs timely sought judicial review.

## II.

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). Childs argues that (1) the ALJ made his RFC determination without giving appropriate weight to the opinion of Childs's treating physician and

3

to Childs's own testimony, (2) the ALJ's RFC determination was not supported by substantial evidence, and (3) substantial evidence did not support the ALJ's determination that there was other work in the national economy that Childs could perform.

## A. RFC Determination

The Commissioner has the burden to demonstrate that its RFC determination is supported by substantial evidence. *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998). The ALJ determined that Childs had the RFC to perform sedentary work with the following restrictions: "could not climb ladders ropes or scaffolds; all other postural activities occasionally; avoid concentrated exposure to workplace hazards including unprotected heights and dangerous machinery; alternate between sitting and standing that could be accommodated with customary work breaks;[2] and frequently handle or finger with the left non-dominant upper extremity." Administrative Record ("AR") at 336.

The ALJ's RFC determination was based on Child's medical history, his hearing testimony, and the opinions of his treating physician— Dr. Brian Mignola— and a consultative expert.

### 1. Medical History

---

[2] The ALJ defined "customary work breaks" as "a morning break, 15-minute-lunch break, either a half-hour or an hour; and an afternoon break of 15 minutes[,]" during which a person could sit and then stand. AR at 375.

Childs's medical history consistently supports his testimony and the opinions of his treating physician.

In 2003, Childs received surgery on his left hand to realign a broken bone and implant a plate and screws to hold the bone in place.[3] AR at 136, 151-55. After his surgery, a physical therapist examined Childs and found that he was unable to close his hand and that he had decreased grip strength. *Id.* at 147.

In August 2006, an MRI showed a "large right-sided paracentral C6-C7 disc herniation." AR at 218. The condition caused some pain, numbness, and tingling. *Id.* He was advised to begin physical therapy and chiropractic adjustment. An EMG/NCV study that same month showed "mild chronic right C7 radiculopathy." *Id.* at 220.

In November 2007, an MRI showed "broad-based disk protrusion with superimposed left paracentral disk herniation at the L5-S1 level," "associated mass effect on the left S1 nerve root and adjacent thecal sac," and "a small, midline disk protrusion in L4-L5." AR at 186. Treating neurologist Dr. Michael Ng wrote that Childs had recently experienced increased pain, and, based on the MRI results, diagnosed him with "lumbrosacral radiculopathy of subacute onset in the right L4

---

[3] Medical records refer to the procedure as "open reduction and internal fixation." AR at 151; *see also* NIH, U.S. National Library of Medicine, *Bone fracture repair - series—Procedure*, MEDLINE PLUS (last visited Oct. 4, 2017), https://medlineplus.gov/ency/presentations/100077_2.htm.

5

distribution" and "chronic left-sided L5-S1 clinical radiculopathy." *Id.* However, an EMG/NCV in January or July 2008 showed "no electrophysiological evidence of . . . lumbosacral radiculopathy." *Id.* at 193. A second MRI, also in July 2008, showed no change compared to the results of Childs's November 2007 MRI. *Id.* at 197.

### 2. Credibility of Childs's Hearing Testimony

At his hearing, Childs testified that his spine and neck problems caused numbness, tingling, and extreme pain; that he could not sit for more than about 10 minutes at a time, stand for more than 10 or 15 minutes at a time, or walk for more than 10 or 12 minutes without needing to stop and lean against something. AR at 366-67. He further testified that he was unable to fully close his left hand or reliably grip objects with it. *Id.* at 368.

The ALJ found that Childs's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that his statements regarding "the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR at 338.

An ALJ must consider seven factors when a claimant's subjective complaints suggest greater severity than can be shown by objective medical evidence.[4] *See Box*

---

[4] The seven factors set forth in the SSA regulations include: (i) claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating or aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (vi) any measures the claimant uses or has used to relieve pain or other symptoms;

*v. Colvin*, 3 F. Supp. 3d 27, 48 (E.D.N.Y. 2014) (holding that the ALJ's credibility analysis was not sufficient because he did not refer to or discuss any of the factors listed in 20 C.F.R. § 404.1529(c)(3)). The ALJ did not expressly consider these seven factors; instead, he determined that Childs's testimony was not credible because "the objective findings does no [sic] support the level of alleged limitations, particularly in regard to the left hand difficulties." *Id.* The ALJ's determination was based primarily on his findings that Childs received "no ongoing treatment" and that "the exams do not document significant limitations." *Id.*

Substantial evidence does not support the ALJ's credibility determination. First, it does not necessarily follow from Childs's lack of ongoing treatment that his symptoms were mild. *Cf. Shaw v. Chater*, 221 F.3d 126, 133 (2d Cir. 2000) ("Just because plaintiff's disability went untreated does not mean he was not disabled.").

Second, objective evidence supported Childs's testimony. The surgeon's isolated statement that Childs had "excellent range of motion" a few months after surgery was ambiguous, given that the surgeon made the statement while recommending that Childs receive physical therapy. *Id.* at 149. When Childs went to therapy, the therapist confirmed the limitations Childs described in his testimony. *Id.* at 147. Commissioner's consultative examiner Dr. Chitoor Govindaraj's opined that Childs's "[h]and dexterity is normal," AR at 208, 327, but did not even specify

---

and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3).

which hand he was describing.

Finally, the determination that Childs's testimony is incredible because it is inconsistent with the objective medical evidence contradicts the SSA regulations' recognition that "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3). The ALJ's determination of Childs's credibility was not proper.

### 3. Opinion of Treating Physician

In questionnaire responses, treating primary care physician Dr. Mignola opined that Childs could perform less than sedentary work based on the following considerations. Childs could not sit for more than 15 minutes without getting up and walking or standing, could not stand for more than 10 minutes without sitting, needed to walk around every 15 minutes for 5 minutes at a time, needed to shift between sitting and standing or walking at will, and would need to lie down several times a day at unpredictable intervals. AR at 319-20. These limitations were the result of herniated discs in Childs's lower back, two herniated discs in his neck, and metal rods in his left hand. *Id.* at 320. Childs could not twist, stoop, crouch, climb stairs or ladders, reach, perform fine or gross manipulation of objects, feel, or push and pull. *Id.* He was required to avoid all exposure to extreme cold and heat, wetness, humidity, noise, several irritants, and hazards such as machinery and heights because those factors "may exacerbate pain and spasm, resulting in reinjury." *Id.* at 321.

The ALJ held that Dr. Mignola's opinion was entitled to "little weight due to the because [sic] it is not supported by the record in terms of the fact that the claimant has basically only been treated with pain medications for his back, the consultative examination findings [did] not support such severe restrictions, [and] the fact that there is no justification whatsoever for many of the limitations included in Dr. Mignola's opinion." *Id.* Although the treating physician's opinion on a claimant's RFC is not entitled to controlling weight, *see* 20 C.F.R. § 416.927(d)(2)-(3), the ALJ's decision to give little weight to Dr. Mignola's opinion was not supported by substantial evidence.

First, Childs's treatment was not limited to pain management; he underwent acupuncture and physical therapy and received a recommendation for epidural steroid injections. *See* AR at 223-24, 484-86. Childs declined the injections because he believed they required the insertion of needles into his spine— a thought that "terrified" him. AR at 369. In any event, again, lack of treatment does not show that his symptoms were mild. *Shaw*, 221 F.3d at 133.

Second, consultative examiner Dr. Chitoor Govindaraj's failure to report similar findings does not justify the ALJ's decision to reject Dr. Mignola's opinion. *See Rosa v. Callahan*, 168 F.3d 72, 81 (2d Cir. 1999) ("This Court has refused to uphold an ALJ's decision to reject a treating physician's diagnosis merely on the basis that other examining doctors reported no similar findings."). After his 2011 exam, Dr.

9

Govindaraj reported that Childs "did not reveal any restriction in standing, sitting or walking or weight restriction." *Id.* at 327. However, the ALJ acknowledged that Dr. Govindaraj's 2011 report was inconsistent with his previous report and with objective medical evidence documenting Childs's herniated disks. The ALJ did not explain why Dr. Govindaraj's conclusions were nevertheless entitled to "some weight." AR at 340.

In his 2010 report— the only one that the ALJ found to be entirely credible— Dr. Govindaraj stated simply that Childs was "cleared for sedentary occupation." AR at 208. However, that report did not include any opinion on Childs's ability to perform specific work-related tasks. Thus, the fact that it did not support Dr. Mignola's opinions regarding Childs inability to perform such tasks is unsurprising and an insufficient basis to undermine Dr. Mignola's opinion.

Third, the ALJ incorrectly found that Dr. Mignola provided no justification for "many of the limitations included in [his] opinion." AR at 340. On the contrary, Dr. Mignola provided justifications for all of the limitations described in his report. *See id.* at 320-21. In particular, Dr. Mignola stated that several environmental factors could "exacerbate pain and spasm, resulting in reinjury." *Id.* at 321. The ALJ either ignored Dr. Mignola's explanation or rejected it without relying on any medical evidence to the contrary. However, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir.

1999).

The ALJ's determination that Dr. Mignola's opinion was not entitled to "significant probative weight" was not supported by substantial evidence.

Because the ALJ's RFC determination was based on an erroneous assessment of Dr. Mignola's opinion, an improper determination of Childs's credibility, and an incomplete view of the medical history, it was not supported by substantial evidence.

**B. Disposition**

"Where the record provides persuasive proof of disability and a remand for further evidentiary proceeding would serve no purpose, the court may reverse and remand solely for the calculation and payment of benefits." *Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 272 (E.D.N.Y. 2015). Thus, where

> reversal "is based solely on the [Commissioner's] failure to sustain his burden of adducing evidence of [plaintiff's] capability for gainful employment and the [Commissioner's] findings that [plaintiff] can engage in 'sedentary' work is not supported by substantial evidence, no purpose would be served by remanding the case for a rehearing . . . ."

*Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000) (quoting *Balsamo v. Chater*, 142 F.3d 75, 82 (2d Cir. 1998)).

Here, as discussed above, the ALJ's RFC determination was not supported by substantial evidence. Moreover, the opinion of Dr. Mignola and the testimony of Childs showed that he was unable to sit for more than 10 or 15 minutes at a time and unable to stand for more than 10 or 15 minutes at a time. Sedentary work "generally

11

involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day . . . ." *Curry*, 209 F.3d at 123. Childs was therefore not capable of performing sedentary work, even with "customary work breaks." This is especially so considering Childs's limitation in the use of his left hand.

Because reversal here is based on the Commissioner's inability to sustain his burden and substantial evidence does not support the ALJ's RFC determination, the Court remands for the sole purpose of calculating an award of benefits. This disposition is "particularly appropriate" given the amount of time Childs has diligently and unsuccessfully sought benefits. *Curry*, 209 F.3d at 124. His application has been pending for nearly eight years, and it has been over three years since the Commissioner agreed to a remand for further proceedings. The Commissioner has had multiple chances and ample time to reach the proper result. Thus, remand solely to calculate an award of benefits is especially warranted where, as here, "a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial, additional delay." *Id.*

### III.

For the foregoing reasons, the Commissioner's motion is denied, Childs's motion is granted, and the case is remanded for calculation of an award of benefits.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 17, 2017